IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | | |
|---|---|---|
| Kokosing Construction Co., Inc., | : | |
| Plaintiff, | : | |
| | : | No. C2 07 265 |
| -vs- | : | |
| | | Judge Holschuh |
| RLI Insurance Company, | : | |
| | | Magistrate Judge King |
| Defendant. | : | |

**MEMORANDUM OF DEFENDANT RLI INSURANCE COMPANY
OPPOSING PLAINTIFF'S MOTION FOR LEAVE TO FILE
<u>FIRST AMENDED COMPLAINT, *INSTANTER*</u>**

This is an action for alleged breach of a surety bond given to Plaintiff Kokosing Construction Co., Inc. (Kokosing) by a subcontractor, American Native Construction and Supply Company (American Native), as collateral security for the performance of a field painting subcontract on an Ohio public highway project.[1]  [See Complaint ¶¶ 3, 4, 5, 6 & Exh. A.]  Kokosing commenced this action on March 2, 2007.  Kokosing's original Complaint alleges a single claim for compensatory damages based upon the alleged breach of a written contract.  [See copy of Subcontract Performance Bond (AIA Form No. 107), Complaint ¶ 6, Exh. A.]  Kokosing's demand for relief states: "WHEREFORE, Kokosing . . . prays for judgment against RLI . . . in the amount of . . . ($612,105), together with interest, costs and attorneys' fees."

RLI Insurance Company (RLI) did not draft the Subcontract or the Subcontract Performance Bond.  The Subcontract is Kokosing's own standard subcontract form

---

[1] A copy of the Subcontract between American Native and Kokosing is attached hereto as RLI Depo. Exh. 6.

1

which American Native signed. As shown on its face, the Bond is a standard form that was prepared and copyrighted by the American Institute of Architects. The original AIA Bond Form, signed by American Native and RLI, was tendered to Kokosing and accepted by Kokosing before American Native commenced work on the project.

On June 29, 2007, Plaintiff filed a Motion for Leave to File First Amended Complaint, *Instanter*. The Motion states: "The purpose of the amendment is to add an additional cause of action for Defendant surety's bad faith refusal to honor its obligations under the surety bond" and asserts, without the citation of any legal authority from Ohio or any other jurisdiction, that "[t]he unreasonable refusal to pay gives rise to an additional cause of action by Plaintiff."

RLI opposes Kokosing's Motion to amend on the grounds that Kokosing's proposed amendment is futile under established Ohio law. More importantly, Kokosing's Motion highlights fatal defects in Kokosing's original Complaint which make Kokosing's proposed First Amended Complaint subject to dismissal for failure to state a claim upon which relief can be granted pursuant to Civil Rule 12 (b)(6). These defects cannot be remedied until the project is completed. Based upon the allegations of Kokosing's Complaints and the plain text of the Performance Bond attached thereto, no payment is currently due Kokosing from RLI under the Bond. Kokosing cannot allege in good faith that American Native's field painting Subcontract is completed, the work is accepted by the State of Ohio, and final payment is due Kokosing. Kokosing's suit on American Native's Performance Bond is premature and subject to dismissal.

I.    **Governing Legal Standards.**

    A.    **Kokosing's Motion to amend raises legal issues governed by the same standard used in FRCP 12 (b)(6).**

As Kokosing's Motion notes, Civil Rule 15 (a) states that "leave shall be freely given when justice so requires." However, the Supreme Court has held that a district court may deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party. See *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The decision to grant leave to amend a complaint is ordinarily in the discretion of the trial court. However, when the objection is based on futility, the court's decision must be based on a legal conclusion. *Evans v. Pearson Enterprises, Inc.*, 434 F.3d 839 (6th Cir. 2006). Thus, the standard of review is the same as a motion to dismiss under FRCP 12 (b)(6). *Midkiff v. Adams County Regional Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005). See also, *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566 (2nd Cir. 2005).

In *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996 (6th Cir. 2005), the Sixth Circuit upheld a District Court's denial of a plaintiff's motion "to amend her complaint to include damages for emotional distress." The issues raised in the *Brumbalough* opinion are similar to the issues raised by Kokosing's Motion to amend in two respects. First, the *Brumbalough* motion raised a legal issue of first impression with regard to the type and scope of damages that are available to a successful plaintiff. [*Id.* at 427 F.3d 1007.] Second, the *Brumbalough* opinion notes that the plaintiff's motion was inconsistent with other relevant opinions rejecting an expansion of the type of damages available.

3

Under FRCP 12(b)(6), a court reviewing a motion to dismiss must "take the plaintiff's factual allegations as true and if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief, then . . . dismissal is proper." *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996), quoting *American Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 353 (6th Cir. 1990). While the federal rules follow notice pleading, the "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner, D.P.M. v. Klais and Company, Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). In this case, Kokosing's proposed Amended Complaint merely alleges an unsupportable legal theory.

Generally, matters outside the pleadings are not to be considered in a 12(b)(6) motion. *Id.* However, when a plaintiff refers to a document in the complaint, and the documents are central to the plaintiff's claims, the defendant may incorporate the documents in a motion to dismiss without converting the motion into a motion for summary judgment. *Id.* at 89. In this case, Plaintiff attached a copy of the Bond to the Complaint as Exhibit A, and RLI has attached hereto a copy of the Subcontract between Plaintiff and American Native described in paragraph 6 of Kokosing's Complaints [See RLI Depo. Exh. 6] and a copy of the completion Subcontract described in paragraph 11 of the Complaint, which Kokosing had not signed as of March 2, 2007 when the Complaint was filed, and paragraph 12 of the proposed Amended Complaint [See RLI Depo. Exh. 67].

4

> **B.     Under established Ohio law, the interpretation and enforcement of the plain text of contracts are legal issues.**

The Ohio Supreme Court's opinion in *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, holds that both the U.S. and Ohio Constitutions protect "the freedom of contract" and directs courts "to give effect to the intent of the parties."  The *Westfield* opinion requires courts to enforce contracts as written ("We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy, *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus." [*Id.* at ¶ 11.]).  It also requires courts "to give effect to the intent of the parties" as expressed within the four corners of the contract ("When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. . . .  As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." [*Id.* at ¶ 11.]).  The *Westfield* opinion expressly prohibits courts from rewriting contracts through judicial interpretation ("A court . . . is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties.  *Id.*; *Blosser v. Enderlin* (1925), 113 Ohio St. 121. . . ." [*Id.* at ¶ 12.]).

The Ohio Supreme Court has consistently applied these legal principles to complex disputes involving the parties to construction contracts.  The Supreme Court's opinion in *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, points out that while construction contracts must be interpreted on a case-by-case basis in light of unique factual circumstances, the same legal principles of interpretation apply to all contracts:

> Despite the parties' attempts to correlate this case with others, our review of the innumerable cases and commentary on the subject leads us to the inescapable conclusion that the meaning of any particular construction contract is to be determined on a case-by-case and contract-by-contract basis, pursuant to the usual rules for interpreting written instruments. See *Cameron*, *supra*, 33 Ohio St. at 374.
>
> The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 923. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus.
>
> "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus. Technical terms will be given their technical meaning, unless a different intention is clearly expressed. *Cincinnati Ins. Co. v. Duffield* (1856), 6 Ohio St. 200, paragraph one of the syllabus.

78 Ohio St.3d at 361.

Earlier this year, the plain text of a construction contract was the basis of the Ohio Supreme Court's opinion in *Dugan & Meyers Constr. Co., Inc. v. Ohio Dept. of Adm. Servs.*, 113 Ohio St.3d 226, 2007-Ohio-1687:

> {¶ 29} Moreover, the contract in this case included terms that addressed the contractor's remedy when changes were made to the plans. This court has long recognized that "where a contract is plain and unambiguous, it does not become ambiguous by reason of the fact that in its operation it will work a hardship upon one of the parties thereto and a corresponding advantage to the other, [and] that it is not the province of courts to relieve parties of improvident contracts." *Ohio Crane Co. v. Hicks* (1924), 110 Ohio St. 168, 172, 2 Ohio Law Abs. 275, 143 N.E. 388, 22 Ohio L. Rep. 74. In addition, "unless there is fraud or other unlawfulness involved, courts are powerless to save a competent person from the effects of his own voluntary agreement." *Ullmann v. May* (1947), 147 Ohio St. 468, 476, 34 O.O. 384, 72 N.E.2d 63.

II. **Under the Plain Text of the Subcontract Performance Bond [Complaint, Exh. A], Kokosing's Complaint and Amended Complaint Do Not State a Claim upon Which Relief Can Be Granted.  As a Matter of Law, No Payment Is Due from RLI until American Native's Subcontract Is Complete and Final Payment Is Due Kokosing.**

Kokosing's Motion to amend highlights two substantive issues.  The first is whether Kokosing's original Complaint or its proposed First Amended Complaint allege a facially valid claim for breach of contract against RLI, as surety for American Native, under the plain text of the Subcontract Performance Bond attached to Kokosing's Complaint as Exhibit A.  With regard to RLI's duties and the conditions upon RLI's potential liability to Kokosing, Exhibit A states:

> NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if [American Native] shall promptly and faithfully perform said subcontract, then this obligation shall become null and void; otherwise it shall remain in full force and effect.
>
> Whenever [American Native] shall be, and be declared by [Kokosing] to be in default under the subcontract, **[Kokosing] having performed [Kokosing's] obligations thereunder**:
>
> (1) [RLI] **may** promptly remedy the default subject to the provisions of paragraph 3 herein, **or**;
>
> (2) [Kokosing] after reasonable notice to [RLI] **may**, or [RLI] upon demand of [Kokosing] **may** arrange for the performance of [American Native's] obligation under the subcontract subject to the provisions of paragraph 3 herein;
>
> (3) The balance of the subcontract price, as defined below, shall be credited against the reasonable cost of completing performance of the subcontract.  If completed by **[Kokosing]**, and the reasonable cost exceeds the balance of the subcontract price, **[RLI] shall pay to [Kokosing] such excess, but in no event shall the aggregate liability of [RLI] exceed the amount of this bond. . . .** The term "balance of the subcontract price," as used in this paragraph, shall mean the total amount payable by **[Kokosing]** to [American Native] under the subcontract and any amendments thereto, less the amounts heretofore properly paid by **[Kokosing]** under the subcontract.

7

> Any Suit under this bond must be instituted before the expiration of two years from date on which final payment under the subcontract falls due. (Emphasis added.)[2]

The Bond is a financial guarantee – RLI is not a contractor. The amount of the financial guarantee that RLI gave to Kokosing is plainly limited to the stated maximum amount of $612,105 and no more. RLI's obligation to make payment is conditioned upon completion. For this reason, the Bond states that suit to recover payment "must be instituted before the expiration of two years from date on which final payment under the subcontract falls due."

The text of the Bond quoted above states conditions that must occur before Kokosing is entitled to recover on the Bond. Black, Henry Campbell, *Black's Law Dictionary* (6th ed. 1990), defines a "condition" as:

> A future and uncertain event upon the happening of which is made to depend the existence of an obligation, or that which subordinates the existence of liability under a contract to a certain future event. Provision making effect of legal instrument contingent upon an uncertain event.
> \* \* \*
> In insurance parlance, the printed conditions on the inside of the policy which serve generally as a limitation of risk or of liability or impose various conditions requiring compliance by the insured.

The allegations of paragraph 10 of Kokosing's Complaint and paragraph 11 of the proposed Amended Complaint create a false dichotomy that is inconsistent with the

---

[2] Kokosing has made claim against ODOT for an amendment to the amount of the field painting subcontract. ODOT has denied Kokosing's claim and Kokosing has exhausted its administrative remedies within ODOT, but Kokosing has two years from the completion of the project to appeal ODOT's denial through the Ohio court system. [See Compston Depo. pp. 245, 247, 273-274, attached hereto.] Kokosing also has claims against the steel suppliers, who American Native and RLI claim failed to apply and cure the primer coat in accordance with ODOT and Industry Standards. Kokosing apparently has one year from the final acceptance of the project to assert these claims. [See Compston Depo. pp. 186-187, attached hereto.]

8

plain text of Exhibit A.  With regard to the breach of the Bond, paragraph 10 of the Complaint states that "RLI has, in response to Kokosing's demand, failed to either complete the work or make payment upon the bond", and paragraph 11 of the proposed Amended Complaint states that "RLI has, in response to Kokosing's demand, refused to either complete the work or make payment upon the bond."  Based upon these allegations, paragraph 14 of the Complaint and paragraph 16 of the proposed Amended Complaint allege the legal conclusion that RLI breached a duty owed to Kokosing under the Bond:  "RLI's failure and refusal to honor its obligations under the bond is a breach of the surety contract."

Contrary to Kokosing's allegations, nothing in the plain text of the Bond requires RLI to "complete the work" or make an immediate payment of the $612,105 contractual limit of liability to Kokosing.  As discussed above, the plain text of the Bond provides three alternative options for completing the Subcontract:

1) RLI **may** affirmatively elect to "promptly remedy the default" – presumably in this case by agreeing to pay American Native for the extra work required to remedy the pinhole problem to ODOT's satisfaction; **or**

2) RLI "upon demand of [Kokosing] **may** arrange for the performance of [American Native's] obligation under the subcontract"; **or**

3) Kokosing "after reasonable notice to [RLI] **may** . . . arrange for the performance of [American Native's] obligation under the subcontract."  (Emphasis added.)

Under the plain text of paragraph (3) of the Condition of the Bond, either Kokosing or

RLI may complete the Subcontract and then, after the work is complete and final payment is due, the amount of any "excess cost" due to American Native's default will be calculated. In this case, Kokosing undertook to arrange the completion of the work. On March 8, 2006, Kokosing notified RLI that Kokosing had declared American Native in default and that if RLI did not elect to "undertake the performance of [American Native's] obligation under the Subcontract on or before March 24, 2006, [Kokosing] will have no alternative but to enter into a contract with another firm for the completion of this work." [See Complaint ¶ 11 & Exh. B.] By permitting Kokosing to complete the subcontract, RLI has not breached any obligation imposed by the plain text of the Bond.

### III. Kokosing's Proposed First Amended Complaint Seeking Extra Contractual Damages Based upon Ohio's Insurance Bad Faith Standard Is Inconsistent with Established Ohio Law.

#### A. Under Ohio law, punitive damages and attorney fees generally are not recoverable in a breach of contract action.

Kokosing's Complaint alleges a claim for compensatory damage based upon the alleged breach of a written contract. It is well established that neither punitive damages nor attorney fees are recoverable in an action for breach of contract under Ohio law. The long-standing general rule in Ohio is that a plaintiff cannot claim bad faith in a breach of contract.

> 1. Where a petition avers the execution of a contract, avers the value of the contract to the petitioner, avers the breach thereof by the defendant, avers the damage to be in a sum equal to the value of the contract, the gravamen of the complaint is the breach of the contract, and the action sounds in contract, and the averment that the breach was unlawful, wilful, wanton and malicious does not change the action from one *ex contractu* to one *ex delicto*.

*Ketcham v. Miller* (1922), 104 Ohio St. 372, paragraph one of the syllabus. Last week,

the Ohio Supreme Court issued it's opinion in *Zappitelli v. Miller*, 114 Ohio St.3d 102, 2007-Ohio-3251.  The *Zappitelli* opinion clarified that the award of punitive damages is a condition to an award of attorney fees as compensatory damages:

> {¶6} It is clear to us that paragraph one of the syllabus states that in an action for tort involving fraud, a jury may award punitive damages.[3] It is equally clear that paragraph two of the syllabus states that when punitive damages are awarded, the award for compensatory damages may include attorney fees. We do not see how it is possible to reach a different conclusion. See *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 558, 1994 Ohio 461, 644 N.E.2d 397 ("Attorney fees may be awarded as an element of compensatory damages where the jury finds that punitive damages are warranted"); *Digital & Analog Design Corp. v. N. Supply Co.* (1992), 63 Ohio St.3d 657, 590 N.E.2d 737 ("Without a finding of malice and the award of punitive damages, plaintiff cannot justify the award of attorney fees * * *.")

Nevertheless, the demand in Kokosing's original Complaint states:  WHEREFORE, Kokosing Construction Co., Inc. prays for judgment against RLI Insurance Company in the amount of Six Hundred Twelve Thousand One Hundred Five Dollars ($612,105), together with interest, costs **and attorneys' fees**."  (Emphasis added.)

In response to Kokosing's demand for the award of attorney fees in a "pure" breach of contract action, the Eighth Defense asserted by RLI in its Answer and Counterclaims states:  "20.  Under Ohio law, attorney fees are not recoverable in a breach of contract action."  Therefore, the first issue raised by Kokosing's proposed amendment is whether the proposed amendment alleges a recognized exception to the general rule that punitive damages and attorney fees are not recoverable in a breach of contract action.

---

[3] The opinion is referring to the opinion and syllabus in *Roberts v. Mason* (1859), 10 Ohio St. 277.

11

**1. The "insurance policy claim" exception pled in Kokosing's Amended Complaint does not apply to Kokosing's claim on a surety bond securing performance of a construction contract.**

The Ohio Supreme Court has regularly defended the general rule that the award of punitive damages and attorney fees is not available in breach of contract actions, but has recognized limited exceptions. Although not specifically identified in Kokosing's Motion, it appears that the Second Cause of Action alleged in Kokosing's proposed First Amended Complaint is based on the insurance claim exception that the Ohio Supreme Court recognized in its 1994 opinion in *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552. With regard to the denial of insurance claims, the first paragraph of the syllabus states:

> 1. An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor. (*Hart v. Republic Mut. Ins. Co.* [1949], 152 Ohio St. 185, 39 O.O. 465, 87 N.E.2d 347, and *Staff Builders, Inc. v. Armstrong* [1988], 37 Ohio St.3d 298, 525 N.E.2d 783, approved and followed; *Slater v. Motorists Mut. Ins. Co.* [1962], 174 Ohio St. 148, 21 O.O.2d 420, 187 N.E.2d 45, paragraph two of the syllabus, overruled; *Motorists Mut. Ins. Co. v. Said* [1992], 63 Ohio St.3d 690, 590 N.E.2d 1228, overruled to the extent inconsistent herewith.)

The insurance exception set forth in *Zoppo* is based on the unique relationship that exists between an insurer and its insured. The rationale for the insurance exception is set forth in the Ohio Supreme Court's opinion in *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272 (1983):

> 1. Based upon the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort against the insurer. (*Hart v. Mutual Ins. Co.*, 152 Ohio St. 185 [39 O.O. 365], followed and extended.)

12

The *Hoskins* opinion explains the unique relationship between an insurer and its insured, which is different than the relationship between a surety and an obligee:

> The imposition of the duty of good faith upon the insurer is justified "because of the relationship between the * * * [insurer and the insured] and the fact that in the insurance field the insured usually has no voice in the preparation of the insurance policy and because of the great disparity between the economic positions of the parties to a contract of insurance; and furthermore, at the time an insured party makes a claim he may be in dire financial straits and therefore may be especially vulnerable to oppressive tactics by an insurer seeking a settlement or a release."

*Id.* at 275.

A surety bond is a three-party contract under the terms of which the surety [RLI], and the principal [American Native], are jointly and severally liable to the obligee [Kokosing] for the performance of an underlying contractual obligation [the Subcontract], rather than a tort or similar loss. *Hopkins v. INA Underwriters Ins. Co.* (1988), 44 Ohio App.3d 186, 188.

The surety is not a party to the underlying contractual obligation. In this case, Kokosing drafted the standard Subcontract Form that American Native signed. Kokosing's standard Subcontract gave Kokosing absolute discretion to reject any surety bond form that was not acceptable to Kokosing. The surety bond that Kokosing approved in this case is a standard bond form drafted and copyrighted by the American Institute of Architects, not RLI. [See Complaint, Exh. A.] Moreover, a surety, by definition, is liable for the debt of another, in this case, the alleged debt of American Native to Kokosing for breach of contract, and not its own debt.

### 2. Ohio courts have not applied the insurance claim exception to the liability of a construction bond surety.

Neither the Ohio Supreme Court nor any other Ohio appellate court has applied the *Zoppo* exception to an obligee's claim on a three-party surety bond securing the performance of a construction contract.  On the contrary, the syllabus to the Ohio Supreme Court's opinion in *Dean v. Seco Electric Co.* (1988), 35 Ohio St.3d 203, 519 N.E.2d 837, suggests that for an obligee of a three-party surety bond securing the performance of a construction project to recover attorney fees, the obligee must allege and prove " that the surety is guilty of actual malice, fraud, or oppression."  The syllabus in the *Seco Electric* case states:

1. In the absence of an express provision to the contrary, a surety's liability upon a labor and material payment bond is limited to payment for labor and material only and does not extend to liability for the statutory penalty, attorney fees, and costs for violation of the prevailing wage statute.
2. A surety is not liable for a penalty assessed against its principal for the wrongful acts of the principal where there has been no showing that the surety ratified the principal's wrongful acts or that the surety is guilty of actual malice, fraud, or oppression.

See also, *Intercargo Ins. Co. v. Mun. Pipe Contrs., Inc.*,127 Ohio Misc.2d 48, 2003-Ohio-7363.  None of the torts identified in the *Seco Electric* syllabus are alleged in Kokosing's Complaint or proposed First Amended Complaint.

### 3. Other state supreme courts have rejected the application of the insurance bad faith standard in dealing with surety bonds given as collateral security for the performance of construction contracts.

The opinion of the Texas Supreme Court in *Great American Insurance Co. v. North Austin Municipal Utility District No. 1*, 908 S.W.2d 415 (1995), discusses the differences between an insurer and a construction surety at length.  [*Id.* at 418-419.]

14

After discussing these differences, the Texas Supreme Court concluded:

> The derivative nature of a surety's liability and its right to rely upon the defenses of its principal compel the conclusion that a surety, like its principal, should be entitled to test the merits of an obligee's claim without the imposition of extracontractual duties to the bond obligee. This Court has held that a surety bond is subject to "the common law of contracts, which is not punitive in nature." *State v. Alpha Oil & Gas, Inc.*, 747 S.W.2d 378, 379 (Tex. 1988). We therefore hold that Great American did not owe a common law duty of good faith and fair dealing to MUD.

908 S.W.2d at 420. The opinion continues:

> Historically, the origins of suretyship predate the advent of insurance by thousands of years. Woods, *Historical Development of Suretyship,* LAW OF SURETYSHIP 1-5, 10 (Gallagher ed. 1993). As discussed in Section II, *supra*, the characteristics of suretyship are different from those of insurance. Insurance involves the pooling and spreading of risk of the insureds, with no right of indemnity possessed by the insurer. Suretyship, on the other hand, allows a surety full rights of indemnity against its principal. [Citation omitted.]

908 S.W.2d at 424.

For the reasons stated above, the Court should overrule Kokosing's Motion for Leave to File First Amended Complaint, *Instanter* alleging a right to recover extra contractual damages from RLI. RLI is not in breach of any of its obligations under the plain text of the surety bond attached to Kokosing's Complaints as Exhibit A, and the potential imposition of extra contractual damages based upon the insurance bad faith standard stated in the *Zoppo* case is inconsistent with established Ohio law governing the liability of a construction contract surety and the well-reasoned Texas Supreme Court opinion in the *Great American* case.

**IV.    Kokosing's Proposed First Amended Complaint Asserting a Claim for Punitive Damages and Attorney Fees Is an Improper Response to RLI's Counterclaim for a Declaratory Judgment.**

Kokosing's original Complaint for breach of contract and the defenses asserted

15

in RLI's Answer establish a genuine dispute between the parties that requires judicial resolution.  However, without providing any analysis, or following the Federal Rules of Civil Procedure, Kokosing argues that RLI's defenses have no merit and therefore, Kokosing is entitled to file a bad faith claim against RLI.  The sole basis of the requested amendment is not the conduct of RLI prior to suit, but Kokosing's assertion that the defenses asserted by RLI's attorneys have no merit.  Kokosing's Motion states:

> . . . Plaintiff's additional cause of action comes after Defendant's counsel has spent a full day deposing one of Plaintiff's witnesses.  Plaintiff believes that the legal theories upon which RLI sought to elicit evidence are not predicated upon circumstances that furnish a reasonable justification for its refusal to pay.[4]

The Civil Rules provide specific remedies for disposing of irrelevant and frivolous defenses and for sanctioning attorney misconduct after a lawsuit has been filed.  Rule 12 (f) authorizes Kokosing to file a Motion to Strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  RLI's Answer and Counterclaims were served upon Kokosing on March 30, 2007.  A preliminary Pretrial was held on April 25, 2007.  Following the Pretrial, the Court issued an agreed Preliminary Pretrial Order stating:  "Motions addressing the parties or pleadings may be filed, if at all, by June 29, 2007."  Kokosing elected not to file a Motion to Strike any allegation or defense asserted in RLI's Answer and Counterclaims.

When Kokosing demanded immediate payment of the full limit of liability of the

---

[4]Plaintiff's Rule 26 (a)(1) Initial Disclosures list 65 potential witnesses and potentially thousands of pages of documents created by those 65 potential witnesses. The Initial Disclosures of the parties list 18 witnesses employed by ODOT, 10 employed by PDM Bridge, 2 employed by Ohio Bridge, and 16 employed by paint manufacturers. Discovery will probably reveal additional witnesses employed by parties who are potentially liable to Kokosing for the same damages asserted against RLI in this case. It is too early for anyone to know what facts will be revealed to the parties by discovery.

Performance Bond by filing this action, Kokosing had not even signed a completion subcontract – much less completed the work to become entitled to final payment on the subcontract. Kokosing did not sign a completion subcontract until March 6, 2007 – four days after Kokosing sued RLI in the Franklin County Common Pleas Court. [See RLI Depo. Exh. 67, attached hereto.] RLI responded to the demand by exercising its statutory right under Ohio law to seek a judicial interpretation of the Bond. [See RLI's Answer and Counterclaims.] R.C. § 2721.01, *et seq.*, is intended to provide an expeditious means of resolving disputes regarding the proper interpretation of written agreements. This includes American Native's Subcontract and the Subcontract Performance Bond. R.C. § 2721.02 (A) states:

> (A) Subject to division (B) of this section, courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding is open to objection on the ground that a declaratory judgment or decree is prayed for under this chapter. The declaration may be either affirmative or negative in form and effect. The declaration has the effect of a final judgment or decree.

Moreover, R.C. § 2721.04 states: ". . . a contract may be construed by a declaratory judgment or decree either before or after there has been a breach of the contract." Consequently, the filing of a bad faith claim provides no proper purpose.

Kokosing responded to RLI's Answer and Counterclaim for a Declaratory Judgment by seeking leave to add a claim for bad faith for actions taken after the lawsuit was filed. Kokosing's Motion is improper and is not supported by the citation of any authority.

In light of the circumstances set forth above, Kokosing's Motion seeking leave to amend to assert a bad faith clam against RLI is both futile and disingenuous at best.

Kokosing's Motion should be overruled.

/s/ William H. Woods
William H. Woods (0006748), Trial Counsel
whwoods@mcnamaralaw.us
Jonathan M. Bryan (0065032)
jmbryan@mcnamaralaw.us
McNamara and McNamara, L.L.P.
88 East Broad Street, Suite 1250
Columbus, OH 43215-3558
Phone (614) 228-6131/Fax 228-6126
Counsel for Defendant
RLI Insurance Company

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Memorandum of Defendant RLI Insurance Company Opposing Plaintiff's Motion for Leave to File First Amended Complaint, *Instanter* was served on this 20th day of July, 2007 via the Court's ECF/electronic system upon:

Daniel F. Edwards
dan.edwards@thompsonhin.com
Michael W. Currie
mike.currie@thompsonhine.com
Thompson Hine LLP
10 West Broad Street, Suite 700
Columbus, OH 43215-3422
Counsel for Plaintiff
Kokosing Construction Co., Inc.

/s/ William H. Woods
William H. Woods (0006748), Trial Counsel